# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

HOWARD BROWN

## DEFENDANTS

TEMPLE UNIVERSITY - OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION

**(b)** County of Residence of First Listed Plaintiff  MONTGOMERY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  PHILADELPHIA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Rahul Munshi, Esq., Console Mattiacci Law, 1525 Locust St., Fl. 9, Philadelphia, PA 19102 (215-545-7676)

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 790 Other Labor Litigation | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | **FEDERAL TAX SUITS** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | ☐ 871 IRS—Third Party 26 USC 7609 | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 2000e, et seq.; 42 U.S.C. §1981; 43 P.S. § 951, et seq.; Phila. Code § 9-1100, et seq.

Brief description of cause:
Plaintiff was discriminated and retaliated against based on race in violation of local, state, and federal law.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
in excess of $75,000

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____  DOCKET NUMBER _____

DATE
12/22/2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| HOWARD BROWN | : | CIVIL ACTION |
| v. | : | |
| TEMPLE UNIVERSITY – OF THE | : | |
| COMMONWEALTH SYSTEM OF HIGHER | : | |
| EDUCATION | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (X)

| | | |
|---|---|---|
| 12/22/2025 | Rahul Munshi, Esquire | Plaintiff, Howard Brown |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-827-5101 | munshi@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: _Philadelphia, PA_____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                          Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?   Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.* ***Federal Question Cases:***

☐ 1.  Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2.  FELA
☐ 3.  Jones Act-Personal Injury
☐ 4.  Antitrust
☐ 5.  Wage and Hour Class Action/Collective Action
☐ 6.  Patent
☐ 7.  Copyright/Trademark
☐ 8.  Employment
☐ 9.  Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

*B.* ***Diversity Jurisdiction Cases:***

☐ 1.  Insurance Contract and Other Contracts
☐ 2.  Airplane Personal Injury
☐ 3.  Assault, Defamation
☐ 4.  Marine Personal Injury
☐ 5.  Motor Vehicle Personal Injury
☐ 6.  Other Personal Injury (*Please specify*):_____
☐ 7.  Products Liability
☐ 8.  All Other Diversity Cases:  *(Please specify)*
        _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**HOWARD BROWN**
**Glenside, PA 19038**

                *Plaintiff*,

    **v.**

**TEMPLE UNIVERSITY - OF THE**
**COMMONWEALTH SYSTEM OF**
**HIGHER EDUCATION**
**1801 Liacouras Walk**
**Philadelphia, PA 19122**

                *Defendant*.

**CIVIL ACTION NO.:**

**JURY TRIAL DEMAND**

### I.   <u>INTRODUCTION</u>

Plaintiff, Howard Brown, brings this action against his former employer, Temple University - Of The Commonwealth System of Higher Education ("Defendant"), for discriminating against Plaintiff based upon his race (Black/African American) and retaliating against him for engaging in protected activity by complaining about race discrimination and a hostile work environment. Defendant's unlawful conduct includes subjecting Plaintiff to a hostile work environment, failing to investigate and remedy the race discrimination to which Plaintiff was subjected, and terminating Plaintiff's employment for false and pretextual reasons, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

Plaintiff seeks all appropriate relief, including back-pay, front-pay, economic damages, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief this Court deems just and proper.

## II.    **PARTIES**

1.    Plaintiff, Howard Brown, is an individual and a citizen of the Commonwealth of Pennsylvania. Plaintiff resides in Glenside, PA.

2.    Plaintiff was born in 1981, and is forty-four (44) years of age.

3.    Plaintiff is Black/African American.

4.    Defendant Temple University - Of The Commonwealth System of Higher Education ("Defendant" or "Temple University") is a state-related public research university organized under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 1801 Liacouras Walk, Philadelphia, PA 19122.

5.    Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

6.    Defendant operates the Fox School of Business, within which the Temple University Small Business Development Center ("SBDC") is housed.

7.    Plaintiff was employed by Defendant from November 2022 through May 6, 2024.

8.    Plaintiff was initially hired by Defendant as an adjunct professor in the Department of Management in or about November 2022.

9.    On or about April 24, 2023, Plaintiff was hired by Defendant as Executive Director of the Temple University Small Business Development Center.

10.    As Executive Director, Plaintiff held a professional position within Defendant's Fox School of Business and was responsible for the overall management, strategic direction, and operations of the SBDC.

11.    Plaintiff's work location was at Alter Hall, 1801 Liacouras Walk, Philadelphia, PA 19122, and the SBDC offices at 1515 Market Street, Suite 523, Philadelphia, Pennsylvania 19102 and 580 Meetinghouse Road, Library Building, Ambler, Pennsylvania 19002.

12.    From April 24, 2023, through July 31, 2023, Plaintiff reported dually to Ron Anderson, Dean of the Fox School of Business, and Ernie Post, State Director of the Pennsylvania Small Business Development Center.

13.    On August 1, 2023, Larry "Chip" Hunter became Dean of the Fox School of Business and the School of Sport, Tourism and Hospitality Management.

14.    From August 1, 2023, through the date of his termination on May 6, 2024, Plaintiff reported directly to Larry Hunter ("Dean Hunter").

15.    Dean Hunter reported to Gregory Mandel, Senior Vice President and Provost of Temple University.

16.    As Executive Director, Plaintiff supervised numerous employees within the SBDC, including Jamie Shanker-Passero, who served as Director of Programs and directly reported to Plaintiff.

17.    At all relevant times, Defendant employed fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year, and was an "employer" within the meaning of Title VII, the PHRA, and the PFPO.

18.    At all relevant times, Defendant acted by and through its authorized officers, agents, employees, and representatives.

19.    At all relevant times, Defendant exercised control over the terms and conditions of Plaintiff's employment, including hiring, supervision, compensation, work assignments, discipline, and termination.

20.    At all relevant times, Defendant had the authority to establish and enforce policies and procedures governing Plaintiff's employment.

21.    Plaintiff was one (1) of approximately three (3) Black employees out of approximately fifteen (15) employees who reported directly to Dean Hunter.

22.    On May 6, 2024, Defendant terminated Plaintiff's employment effective immediately without providing any explanation for the termination.

23.    At all relevant times, Defendant's actions and omissions were intentional, willful, wanton, malicious, and in reckless disregard of Plaintiff's rights.

24.    Defendant conducts regular and continuous operations in interstate commerce, including but not limited to: recruiting students and employees from outside Pennsylvania; purchasing goods and services from out-of-state vendors; receiving federal funding for research and educational programs; maintaining relationships with out-of-state educational institutions; and conducting business transactions across state lines.

25.    Defendant regularly conducts business within the Commonwealth of Pennsylvania and maintains offices and operations within the Eastern District of Pennsylvania.

26.    Defendant maintains offices and conducts operations at Alter Hall, 1801 Liacouras Walk, Philadelphia, PA 19122, and at the SBDC offices at 1515 Market Street, Suite 523, Philadelphia, Pennsylvania 19102, both of which are located within the Eastern District of Pennsylvania.

27.    At all relevant times, Plaintiff primarily worked from Defendant's business offices in Philadelphia, Pennsylvania.

29.    At all relevant times, Defendant acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

30.    At all relevant times, Defendant acted as an employer within the meaning of the statutes which form the basis of this matter.

31.    At all relevant times, Plaintiff was an employee of Defendant within the meaning of the statutes which form the basis of this matter.

32.    As Executive Director of the SBDC, Plaintiff supervised numerous subordinates, including but not limited to Jamie Shanker-Passero (Director of Programs), Cherrill Wilson (Senior Associate Director), and various business consultants, student workers, and administrative staff.

33.    Jamie Shanker-Passero is white.

34.    Cherrill Wilson is Black/African American.

35.    Dean Hunter is white.

36.    Gregory Mandel is white.

## III.    **JURISDICTION AND VENUE**

39.    The causes of action which form the basis of this matter arise under Title VII, Section 1981, the PHRA, and the PFPO.

40.    This Court has jurisdiction over Count I (Title VII) and Count II (Section 1981) pursuant to 28 U.S.C. §1331.

41.     This Court has supplemental jurisdiction over Count III (PHRA) and Count IV (PFPO) pursuant to 28 U.S.C. §1367.

42.     Venue is proper in this District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f).

43.     On or about September 4, 2024, Plaintiff filed a Complaint with the Philadelphia Commission on Human Relations ("PCHR") complaining of the acts of discrimination and retaliation alleged herein. Plaintiff's PCHR Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the PCHR Complaint (with personal identifying information redacted).

44.     On or about December 4, 2025, the EEOC issued Plaintiff a Notice of Right to Sue for his Charge of Discrimination. Attached hereto and marked as Exhibit "2" is a true and correct copy of the Notice (with personal identifying information redacted).

45.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action, including the timely filing of the PCHR Complaint and EEOC Charge, and the timely filing of this action within ninety (90) days of receipt of the Notice of Right to Sue.

## IV.    **FACTUAL ALLEGATIONS**

49.     Plaintiff earned a Bachelor's degree in Finance from Temple University's Fox School of Business.

50.     Following his undergraduate education, Plaintiff was employed by Goldman Sachs on Wall Street, where he gained valuable experience in finance.

51.    Plaintiff later earned a Master's degree in Education Entrepreneurship from the University of Pennsylvania's Graduate School of Education.

52.    Plaintiff has over twenty (20) years of experience in business, education, and economic development.

53.    Throughout his career, Plaintiff has been recognized as an expert on economic development and entrepreneurship.

54.    In 2008, Plaintiff founded an investment company focusing on social infrastructure and economic development.

55.    Plaintiff served as past board chairperson of the American Red Cross's Southeastern Pennsylvania chapter, where he developed new models and mechanisms to increase fundraising and donations.

56.    In 2019, Plaintiff founded an educational technology company to improve teaching, learning, and engagement in classrooms.

59.    Plaintiff has taught in the School District of Philadelphia, educating students about business, finance, and entrepreneurship.

60.    In 2013, Plaintiff was appointed as a professor in the Management Department at Temple University.

61.    Plaintiff's work has been grounded in service to individuals, families, and communities.

62.    Plaintiff has received numerous accolades for his contributions to education and community development, including the prestigious Musser Award.

63.    In or about November 2022, Plaintiff was hired by Defendant as an adjunct professor in the Department of Management at the Fox School of Business.

64.     On or about April 24, 2023, Plaintiff was promoted to the position of Executive Director of the Temple University Small Business Development Center.

65.     When Plaintiff assumed the role of Executive Director, he reported dually to Dean Ron Anderson of the Fox School of Business and Ernie Post, State Director of the Pennsylvania Small Business Development Center.

66.     Dean Anderson recruited Plaintiff for the Executive Director position based on Plaintiff's extensive qualifications and experience.

67.     As Executive Director, Plaintiff was responsible for the overall management, strategic direction, and operations of the SBDC.

68.     Plaintiff's responsibilities included overseeing the delivery of no-cost business services and solutions to empower small business owners in the Philadelphia region with the knowledge and resources needed to succeed.

69.     The Temple University Small Business Development Center has served the region's small businesses for more than forty (40) years.

70.     The SBDC serves Philadelphia County, Eastern Montgomery County, and Lower Bucks County.

71.     The SBDC is funded by the U.S. Small Business Administration ("SBA") and the Pennsylvania Department of Community and Economic Development ("DCED").

72.     As Executive Director, Plaintiff supervised numerous employees within the SBDC, including Jamie Shanker-Passero (Director of Programs), Cherrill Wilson (Senior Associate Director), Trish Klein (Assistant Director, Finance), Taya Brown (Administrative Coordinator), and various business consultants, student workers, and administrative staff.

73.    Under Plaintiff's leadership, the Temple University Small Business Development Center met and exceeded all SBA funding goals for the SBA fiscal year ending September 30, 2023.

75.    For the SBA fiscal year 2023, the SBDC achieved the following results: 71 new businesses started, 3,426 jobs supported, 362 clients served, and assisted in the acquisition of $25.8 million in new capital.

76.    During the same period, the SBDC conducted approximately 108 training events with 4,022 attendees.

77.    The SBDC's accomplishments under Plaintiff's leadership exceeded minimum deliverable expectations by 127% for new businesses started, 103% for jobs supported, 149% for clients served, and 119% for capital formation.

78.    On or about May 31, 2023, Defendant issued a press release announcing Plaintiff's appointment as Executive Director of the SBDC.

79.    The press release stated: "Howard's experienced business acumen and dedication to his community will help elevate the offerings and prestige of the Small Business Development Center, which is a valued partner of the Fox School in engaging our Philadelphia small business owners and entrepreneurs."

80.    In October 2023, Plaintiff provided Dean Chip Hunter with a comprehensive report documenting the SBDC's exceptional performance under his leadership during the SBA fiscal year 2023.

81.    Throughout his tenure as Executive Director, Plaintiff consistently performed his job duties in a highly competent manner.

82.    Plaintiff had no performance or disciplinary issues throughout his employment with Defendant.

83.    Plaintiff successfully navigated the SBDC through a period of transition and demonstrated strong leadership in advancing the Center's mission.

84.    Plaintiff developed positive relationships with key stakeholders, including federal and state legislators, community economic development organizations, and small business owners throughout the region.

85.    Throughout Plaintiff's tenure as Executive Director, Jamie Shanker-Passero, who is white, engaged in a pattern of insubordinate, disrespectful, and discriminatory conduct toward Plaintiff.

86.    Shanker-Passero refused to follow Plaintiff's directives and instructions.

87.    Shanker-Passero circumvented Plaintiff's authority by making decisions without Plaintiff's knowledge or approval.

91.    Shanker-Passero undermined Plaintiff's authority with both internal staff and external partners.

92.    Shanker-Passero excluded Plaintiff from meetings and communications related to his job duties and responsibilities.

93.    Shanker-Passero made false statements about Plaintiff to others.

94.    Shanker-Passero spoke over Plaintiff in meetings in front of numerous SBDC staff members.

95.    Shanker-Passero unjustly criticized the performance of Black employees, including Plaintiff.

96.    Shanker-Passero unjustly criticized the performance of Black SBDC employees, including Taya Brown, Harry Michel, and Black employee consultant John Leftwich.

97.    On or about October 3, 2023, Shanker-Passero made negative racialized comments about "people from North Philadelphia."

98.    Specifically, Shanker-Passero expressed discomfort with carrying her laptop on the orange line for her commute, stating that when she rides the orange line, she turns her diamond wedding ring inside out.

99.    Plaintiff understood Shanker-Passero's comments to be race-based stereotypical statements about North Philadelphia residents.

100.    On or about October 20, 2023, Plaintiff sent an email to Dean Hunter regarding behavior and performance concerns with Shanker-Passero.

101.    Dean Hunter instructed Plaintiff that his "first contact" regarding Shanker-Passero should be with La'Tanya Brisbon, Human Resources Business Partner, and that he may also be referred to work with Deirdre Culbreath-Walton, Assistant Vice President, Human Resource Operations.

102.    On or about October 26, 2023, as part of an internal audit, Plaintiff requested confirmation from all SBDC staff about any contracts signed on behalf of the SBDC from April 24, 2023, through October 26, 2023.

103.    In response to Plaintiff's October 26, 2023 request, Shanker-Passero stated: "No contracts signed."

104.    Plaintiff subsequently discovered that Shanker-Passero had, in fact, unauthorized signed an agreement with a third-party vendor on behalf of the SBDC.

11

105.    On or about November 1, 2023, Plaintiff sent an email to Dean Hunter, copying Deirdre Culbreath-Walton, regarding Shanker-Passero's unauthorized contract signing with a third-party.

106.    In his November 1, 2023 email, Plaintiff explained that Shanker-Passero had signed a contract without obtaining proper authorization from the legal department or seeking approval from higher management.

107.    Plaintiff further stated in his November 1, 2023 email that Shanker-Passero had been dishonest and lied about signing any contract with any third parties.

108.    On or about November 30, 2023, Plaintiff sent a formal written complaint to Deirdre Culbreath-Walton, copying Valerie Harrison (Vice President for Diversity, Equity, Inclusion and Community Impact) and La'Tanya Brisbon, regarding Shanker-Passero's conduct.

109.    In his November 30, 2023 complaint, Plaintiff stated: "Ms. Shanker-Passero has also made anti-black remarks and has sought to implement strategies and initiatives that would disproportionately exclude underrepresented groups from being able to access non-discriminatory SBA funded services provided by the Temple University Small Business Development Center. For example, during a meeting in my office, Ms. Shanker-Passero made racialize and stereotypical statements about North Philadelphia residents, et.all [sic]."

110.    Following his November 30, 2023 complaint, Plaintiff met with Culbreath-Walton and Sandra Foehl of Temple University's Equal Opportunity Compliance Office.

111.    During this meeting, Plaintiff discussed Shanker-Passero's race discriminatory comments and conduct, the emotional impact it was having on him, and the impact it was having on how other employees viewed him.

112.    Plaintiff stated during the meeting that it seemed to him that Shanker-Passero's conduct was being supported by Dean Hunter, which undermined him.

113.    Plaintiff received no conclusion to any investigation into his race discrimination complaints.

114.    Shanker-Passero continued to engage in unauthorized and insubordinate conduct throughout early 2024.

115.    In February 2024, Shanker-Passero inappropriately disseminated an unauthorized Request for Proposal (RFP) to third-party accounting firms without proper authorization from Plaintiff, breaching established Temple University policies and procedures and procurement protocols.

116.    When Plaintiff confronted Shanker-Passero about this breach of protocol, she asserted that such actions were not problematic in her view, citing past practices of disseminating documentation without the necessary review and authorization from previous Directors.

117.    Shanker-Passero then proposed splitting the total funding of $40,000 between two accounting firms to circumvent Temple University's procurement requirements, which mandate a competitive bidding process for purchases of more than $25,000.

118.    When Plaintiff refused to comply with Shanker-Passero's unethical request, she pressured him by involving a former interim director, claiming that the idea was conceived before Plaintiff's tenure as Director.

119.    On or about January 31, 2024, Shanker-Passero submitted grant documentation with incorrect financial information to the Office of the Vice President of Research Department (OVPR) without consulting Plaintiff or the Assistant Director of Finance who was responsible for developing the budget.

120. Prior to the January 31, 2024 submission, Plaintiff had explicitly requested a detailed description of the program structure to assess the feasibility of funding, but Shanker-Passero refused to provide the information.

121. Instead, Shanker-Passero collaborated with Nicole Stilianos from the Fox School Dean's Office outside of the scope of Plaintiff's supervision and excluded Plaintiff from important correspondence with the Department of Community & Economic Development (DCED).

122. On or about February 29, 2024, Plaintiff met with James Rainey, Assistant Director of Employee Relations, and Laryn Jackson, Administrative Specialist Employee and Labor Relations.

123. During the February 29, 2024 meeting, Plaintiff complained of race discrimination in connection with Shanker-Passero and provided examples of the same.

124. Plaintiff stated that he had previously submitted a race discrimination complaint in connection with Shanker-Passero but had not received any conclusion in response to his complaint.

129. On March 11 and 12, 2024, Plaintiff sent emails to Culbreath-Walton complaining of race discrimination in connection with how he was being treated.

130. On or about March 19, 2024, Plaintiff met with Rainey and Jackson and complained of race discrimination in connection with Shanker-Passero, providing examples of the same.

131. During the March 19, 2024 meeting, Plaintiff stated that he was concerned that Dean Hunter was supportive of Shanker-Passero.

132. On or about March 19, 2024, Shanker-Passero sent an email stating that she had been instructed by Human Resources to work remotely.

133.    On or about March 22, 2024, Shanker-Passero resigned from her employment with Defendant, effective March 29, 2024.

134.    On or about March 27, 2024, at approximately 3:15 PM and after meeting with Dean Hunter, Shanker-Passero came into Plaintiff's office and screamed in his face the following: "My keys are on the table. I hate you and it has been absolutely sad what has happened to the center under you, and the whole fucking team feels that way."

135.    On or about March 27, 2024, following the above incident, Plaintiff sent an email to Debbie Campbell, Senior Vice Dean, copying Culbreath-Walton, Sharon Boyle (Vice President, Human Resources), and Dean Hunter, describing the incident and Shanker-Passero's comments.

136.    Following the March 27, 2024 incident, Plaintiff worked from home for two days due to concerns about his safety in the workplace.

137.    On or about March 28, 2024, Culbreath-Walton sent an email stating that she was in receipt of Plaintiff's email regarding the incident and that they would "work with the Dean's office to review the situation."

140.    Dean Hunter treated Plaintiff differently and worse, and in a more hostile and dismissive manner, than non-Black and non-complaining employees were treated.

141.    Dean Hunter unjustly criticized Plaintiff's performance.

142.    Dean Hunter held Plaintiff to a more stringent standard than non-Black and non-complaining employees.

143.    Dean Hunter undermined Plaintiff's authority as Executive Director.

144.    Throughout Plaintiff's employment under Dean Hunter, Dean Hunter appeared to support Shanker-Passero's insubordinate and discriminatory conduct toward Plaintiff.

145.    On or about April 2, 2024, during a meeting with Dean Hunter and James Rainey, Dean Hunter criticized Plaintiff's communication and demanded direct access to all SBDC staff members.

146.    Dean Hunter stated he could not "do his job" without direct communication with all staff members and that Plaintiff could "be present if I so wished," thereby further undermining Plaintiff's authority as Executive Director.

147.    On or about April 10, 2024, Plaintiff sent an email to Sharon Boyle, Culbreath-Walton, Rainey, and Harrison expressing his interest in having the Pennsylvania Human Relations Commission provide workplace training focusing on implicit and explicit bias.

148.    In his April 10, 2024 email, Plaintiff stated: "I expressed my keen interest in having the Pennsylvania Human Relations Commission provide workplace training, focusing on implicit and explicit bias, to enhance the cultural competency and inclusivity of our team. However, to my surprise, Dean Hunter expressed reservations and indicated that he did not believe such training would be prudent or impactful. He further emphasized his discomfort with bringing in an external agency for this purpose. I was taken aback by Dean Hunter's response as fostering a diverse and inclusive work environment is not only essential in fostering a positive workplace culture but also aligns with the values of our organization."

149.    Plaintiff received no response to his April 10, 2024 email.

150.    On or about April 15, 2024, Plaintiff met with Valerie Harrison and complained of race discrimination and retaliation in connection with how he was being treated.

151.    During the April 15, 2024 meeting, Plaintiff stated that he felt targeted by Dean Hunter based on his race discrimination complaints and that he was concerned that Dean Hunter blamed him for Shanker-Passero's resignation.

152.    On or about April 30, 2024, Plaintiff met with Dean Hunter for a standard biweekly meeting.

153.    During the April 30, 2024 meeting, Dean Hunter and Plaintiff discussed open positions in the department and which current employees were qualified to fill the open positions.

154.    Regarding a forthcoming open Senior Associate Director position, which had been held by Cherrill Wilson, who is Black, Dean Hunter commented: "it would be great for you to have a white person in that position."

155.    Plaintiff made it clear that he objected to Dean Hunter's race-based comment.

156.    In addition to the April 30, 2024 comment, Dean Hunter allegedly stated that he had "no intention of meeting with any Black politicians for at least a year" and characterized them as "all talk and untrustworthy."

157.    Throughout his employment under Dean Hunter, Plaintiff was excluded from meetings and communications related to his job duties and responsibilities.

158.    Quiana Williams, Dean Hunter's executive assistant, informed Plaintiff that he could no longer reserve the conference room on his floor.

159.    Williams advised Plaintiff to be careful about complaining to Senior Vice Dean Debbie Campbell.

160.    The pattern and pervasiveness of the discriminatory and hostile conduct to which Plaintiff was subjected created a hostile work environment.

161.    The hostile work environment was severe and pervasive.

162.    The hostile work environment was objectively and subjectively hostile.

163.    The hostile work environment interfered with Plaintiff's ability to perform his job duties.

164. Defendant failed to remedy or prevent the race discrimination and hostile work environment to which Plaintiff was subjected.

165. Defendant failed to adequately investigate Plaintiff's race discrimination complaints.

166. Defendant's race discriminatory conduct toward Plaintiff has caused him emotional distress.

167. Defendant's comments and conduct evidence a bias against Black and/or complaining employees.

197. Throughout the period from November 2023 through May 2024, Defendant failed to investigate Plaintiff's race discrimination complaints.

198. Throughout the period from November 2023 through May 2024, Defendant failed to provide any conclusions of any investigation to Plaintiff.

199. Throughout the period from November 2023 through May 2024, Defendant failed to take corrective action despite Plaintiff's multiple complaints about race discrimination over nearly a year.

200. Before Plaintiff engaged in protected activity, Plaintiff had no indication that his job was in jeopardy.

201. On February 23, 2024, without explanation, Defendant cancelled Plaintiff's purchasing card.

202. Plaintiff was informed by Quiana Williams, Dean Hunter's administrative assistant, that multiple people in Dean Hunter's office held purchasing cards.

203.    The cancellation of Plaintiff's purchasing card occurred shortly after Plaintiff's February 29, 2024 meeting with Human Resources during which Plaintiff complained of race discrimination.

223.    In April 2024, when Plaintiff requested implicit and explicit bias training, Dean Hunter expressed reservations and indicated that he did not believe such training would be prudent or impactful.

224.    Dean Hunter further emphasized his discomfort with bringing in an external agency for bias training.

225.    Dean Hunter's resistance to bias training occurred shortly after Plaintiff's multiple complaints of race discrimination.

226.    On May 6, 2024, in a meeting with Dean Hunter and James Rainey, Defendant terminated Plaintiff's employment effective immediately.

227.    Plaintiff was not given any explanation for his termination, and the termination was immediate.

239.    The May 6, 2024 termination occurred shortly after Plaintiff's multiple complaints of race discrimination spanning from November 2023 through April 2024.

240.    The temporal proximity between Plaintiff's protected activity and his termination was approximately three (3) weeks from Plaintiff's last complaint on April 15, 2024.

241.    The temporal proximity between Plaintiff's April 10, 2024 email regarding bias training and his termination was less than one (1) month.

242.    The temporal proximity between Plaintiff's objection to Dean Hunter's race-based comment on April 30, 2024, and his termination was six (6) days.

243.   Plaintiff received no explanation, including the criteria, as to why he was terminated and non-Black and/or non-complaining employees were retained.

244.   Before Plaintiff engaged in protected activity, Plaintiff had no indication that his job was in jeopardy.

245.   At the time of his termination, Plaintiff was, to his knowledge, the only employee reporting to Dean Hunter who engaged in protected activity.

246.   Plaintiff was the only employee who was terminated on May 6, 2024.

247.   Plaintiff had no performance or disciplinary issues throughout his employment.

248.   Plaintiff successfully led the SBDC to meet and exceed all SBA funding goals for the fiscal year ending September 30, 2023.

249.   Plaintiff had no opportunity to remain employed with Defendant.

250.   Following Plaintiff's termination, Defendant assigned Plaintiff's job duties and responsibilities to non-complaining and/or non-Black employees.

251.   Plaintiff was more qualified to perform his job duties and responsibilities than the non-complaining and/or non-Black employees to whom his job duties and responsibilities were assigned.

252.   Defendant's stated reasons for terminating Plaintiff were false and pretextual.

253.   Similarly situated white and/or non-complaining employees were not subjected to the same treatment as Plaintiff.

254.   Defendant terminated Plaintiff's employment because of his race and/or his engaging in protected activity.

260.   Defendant has not provided a legitimate, non-discriminatory or non-retaliatory reason for Plaintiff's termination.

261.    Defendant's failure to provide any reason for Plaintiff's termination demonstrates that the termination was discriminatory and retaliatory.

262.    Defendant terminated Plaintiff's employment because of his race and/or his engaging in protected activity.

263.    Defendant subjected Plaintiff to a hostile work environment because of his race and/or his engaging in protected activity.

281.    Defendant failed to remedy or prevent the race discrimination and retaliation to which Plaintiff was subjected.

282.    Defendant failed to investigate Plaintiff's race discrimination complaints.

283.    Defendant's race discriminatory and retaliatory conduct toward Plaintiff has caused him emotional distress.

284.    Defendant's comments and conduct evidence a bias against Black and/or complaining employees.

285.    The discriminatory and retaliatory conduct of Defendant as alleged herein was sufficiently severe and/or pervasive to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

286.    Defendant treated non-Black and/or non-complaining employees more favorably than they treated Plaintiff.

287.    Similarly situated non-Black and/or non-complaining employees were not subjected to a hostile work environment or terminated for false and pretextual reasons.

288.    The retaliatory actions taken against Plaintiff after he complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

289.    As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

290.    Defendant's race discriminatory and retaliatory conduct toward Plaintiff has caused him emotional distress.

291.    As a direct result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer depression, heightened anxiety, increased stress, insomnia, severe lack of sleep, and periods of deep sadness.

292.    The discriminatory and retaliatory conduct has caused Plaintiff significant emotional distress, including feelings of marginalization, oppression, disrespect, and being undervalued as a professional.

293.    Defendant's discriminatory and retaliatory conduct has negatively impacted Plaintiff's professional reputation and career trajectory.

294.    Plaintiff suffered humiliation and loss of professional standing as a result of Defendant's discriminatory and retaliatory treatment.

297.    As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-

esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## COUNT I - TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (Race Discrimination and Retaliation)

305.    Plaintiff incorporates by reference the foregoing paragraphs as set forth herein in their entirety.

306.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Title VII.

307.    Defendant discriminated against Plaintiff because of his race (Black/African American) by subjecting him to a hostile work environment, treating him less favorably than similarly situated non-Black employees, and terminating his employment.

308.    Defendant retaliated against Plaintiff for engaging in protected activity by complaining about race discrimination, subjecting him to adverse employment actions, and ultimately terminating his employment.

310.    Plaintiff's race (Black/African American) was a motivating factor in the adverse employment actions taken against him, including the hostile work environment to which he was subjected and his termination.

311.    Plaintiff's protected activity of complaining about race discrimination was a motivating factor in the adverse employment actions taken against him, including the cancellation of his purchasing card, the undermining of his authority, and his termination.

312.    Defendant's conduct was intentional and willful.

313.    Said violations were done with malice and/or reckless indifference to Plaintiff's federally protected rights and warrant the imposition of punitive damages.

314.    As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has suffered the damages and losses set forth herein, including but not limited to lost wages, lost benefits, emotional distress, humiliation, and other compensatory damages, and has incurred attorneys' fees and costs.

315.    Plaintiff is entitled to compensatory damages, punitive damages (subject to statutory caps under Title VII), back pay, front pay, attorneys' fees and costs, and all other relief this Court deems just and proper.

316.    Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

317.    No previous application has been made for the relief requested herein.

## COUNT II - SECTION 1981 OF THE CIVIL RIGHTS ACT OF 1866 (Race Discrimination and Retaliation)

318.    Plaintiff incorporates by reference the foregoing paragraphs as set forth herein in their entirety.

319.    Defendant discriminated against Plaintiff because of his race (Black/African American) in the performance and termination of that employment contract.

320.    Defendant retaliated against Plaintiff for opposing race discrimination by subjecting him to adverse employment actions and ultimately terminating his employment.

321.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated Section 1981.

322.    Defendant's conduct was intentional and willful.

326.    Said violations were done with malice and/or reckless indifference to Plaintiff's federally protected rights and warrant the imposition of punitive damages.

327.    As a direct and proximate result of Defendant's violations of Section 1981, Plaintiff has suffered the damages and losses set forth herein, including but not limited to lost wages, lost benefits, emotional distress, humiliation, pain and suffering, and other compensatory damages, and has incurred attorneys' fees and costs.

328.    Plaintiff is entitled to compensatory damages (unlimited), punitive damages (unlimited), back pay, front pay, attorneys' fees and costs under 42 U.S.C. § 1988, and all other relief this Court deems just and proper.

329.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

330.    No previous application has been made for the relief requested herein.

## COUNT III - PENNSYLVANIA HUMAN RELATIONS ACT (Race Discrimination and Retaliation)

331.    Plaintiff incorporates by reference the foregoing paragraphs as set forth herein in their entirety.

332.    Defendant discriminated against Plaintiff because of his race (Black/African American) by subjecting him to a hostile work environment, treating him less favorably than similarly situated non-Black employees, and terminating his employment.

333.    Defendant retaliated against Plaintiff for engaging in protected activity by opposing race discrimination and filing complaints, subjecting him to adverse employment actions, and ultimately terminating his employment.

334.    Said violations were intentional and willful.

335.    As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has suffered the damages and losses set forth herein, including but not limited to lost wages, lost benefits, emotional distress, humiliation, pain and suffering, and other compensatory damages, and has incurred attorneys' fees and costs.

336.    Plaintiff is entitled to back pay, front pay, compensatory damages, attorneys' fees and costs, and all other relief this Court deems just and proper.

339.    Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

340.    No previous application has been made for the relief requested herein.

## COUNT IV - PHILADELPHIA FAIR PRACTICES ORDINANCE (Race Discrimination and Retaliation)

341.    Plaintiff incorporates by reference the foregoing paragraphs as set forth herein in their entirety.

342.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendant has violated the PFPO.

343.    Defendant discriminated against Plaintiff because of his race (Black/African American) by subjecting him to a hostile work environment, treating him less favorably than similarly situated non-Black employees, and terminating his employment.

344.    Defendant retaliated against Plaintiff for engaging in protected activity by opposing race discrimination and filing complaints, subjecting him to adverse employment actions, and ultimately terminating his employment.

345.   Said violations were intentional, malicious and/or willful, and done with malice and/or reckless indifference to Plaintiff's rights, warranting the imposition of punitive damages.

346.   As a direct and proximate result of Defendant's violations of the PFPO, Plaintiff has suffered the damages and losses set forth herein, including but not limited to lost wages, lost benefits, emotional distress, humiliation, pain and suffering, and other compensatory damages, and has incurred attorneys' fees and costs.

347.   Plaintiff is entitled to compensatory damages, punitive damages, back pay, front pay, attorneys' fees and costs, and all other relief this Court deems just and proper.

351.   Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

352.   No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a.     declaring the acts and practices complained of herein to be in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq.;

b.     declaring the acts and practices complained of herein to be in violation of Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

c.     declaring the acts and practices complained of herein to be in violation of the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, et seq.;

27

d.     declaring the acts and practices complained of herein to be in violation of the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, et seq.;

e.     enjoining and permanently restraining Defendant from engaging in the violations alleged herein;

f.     entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

g.     awarding compensatory damages to make Plaintiff whole for all lost earnings, earning capacity, and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

h.     awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional distress, mental anguish, humiliation, embarrassment, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

i.     awarding punitive damages to Plaintiff under Title VII (subject to statutory caps);

j.     awarding punitive damages to Plaintiff under Section 1981 (unlimited);

k.     awarding punitive damages to Plaintiff under the PFPO;

l.     awarding back pay and front pay to Plaintiff;

m.     awarding pre-judgment and post-judgment interest;

n.     awarding Plaintiff the costs of suit and reasonable attorneys' fees pursuant to Title VII, 42 U.S.C. § 1988, the PHRA, and the PFPO;

o.     awarding Plaintiff such other damages as are appropriate under Title VII, Section 1981, the PHRA, and the PFPO; and

p.    granting such other and further relief as this Court may deem just, proper, or equitable.

**CONSOLE MATTIACCI LAW, LLC**

Dated: <u>December 22, 2025</u>

BY:    _____

Rahul Munshi, Esquire
CONSOLE MATTIACCI LAW, LLC
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
Telephone: (215) 545-7676
Facsimile: (215) 565-2858
Munshi@consolelaw.com

*Attorneys for Plaintiff,*
*Howard Brown*

# EXHIBIT 1

Page: 03 of 11          2024-09-04 12 19:06 EDT          12155652858          From  Nancy Giaci

CITY OF PHILADELPHIA
PHILADELPHIA COMMISSION ON HUMAN RELATIONS

## COMPLAINT

| | |
|---|---|
| COMPLAINANT: | : |
| **HOWARD BROWN** | :     PCHR Docket No. 2024-09-04-18608 |
| | :     EEOC Docket No. 17G-2024-00074 |
| v. | : |
| RESPONDENT: | : |
| **TEMPLE UNIVERSITY** | : |

1. The Complainant herein is:

   Name:            Howard Brown

   Address:         ▇▇▇▇▇▇▇▇▇▇▇▇▇▇
                    Glenside, PA 19038

1. The Respondent herein is:

   Name:            Temple University

   Address:         1801 Liacouras Walk
                    Philadelphia, PA 19122

2. I, Howard Brown, the Complainant herein, allege that I was subjected to unlawful discrimination because of my race (black), and retaliation because of my engaging in protected activity, as set forth below.

### Discrimination and Retaliation

   A. I specifically allege:

   [1]        I was hired by Respondent in or about November 2022.

[2]     I last held the position of Executive Director for the Temple University Small Business Development Center.

[3]     I consistently performed my job duties in a highly competent manner.

[4]     I last reported to Larry Hunter (white), Dean, Fox School of Business. Hunter reported to Gregory Mandel (white), Senior Vice President and Provost.

[5]     On August 1, 2023, I began reporting to Hunter.

[6]     Hunter had no role in my being hired at Respondent.

[7]     I was one (1) of approximately three (3), black employees, out of approximately fifteen (15) employees, reporting directly to Hunter.

[8]     I was treated differently and worse, and in a more hostile and dismissive manner, than nonblack and noncomplaining employees were treated.

[9]     My performance was unjustly criticized.

[10]    My subordinate, Jamie Shanker-Passero (white), Director of Programs, who directly reported to me, refused to follow my directives.

[11]    Shanker-Passero circumvented me.

[12]    Shanker-Passero undermined me.

[13]    Shanker-Passero excluded me from meetings and communications related to my job duties.

[14]    Shanker-Passero made false statements about me.

[15]    Shanker-Passero spoke over me in meetings.

[16]    Shanker-Passero unjustly criticized black employees, including me.

[17]    Shanker-Passero made negative comments about "people from North Philadelphia," which I understood to be race based.

Page: 05 of 11          2024-09-04 12 16 06 EDT          12199092696          From  Nancy Glaci

[18]       On November 30, 2023, in a letter to Deirdre Culbreath-Walton (white), Assistant Vice President, Human Resource Operations, copying Valerie Harrison (black), Vice President for Diversity, Equity, Inclusion and Community Impact, and La'Tanya Brisbon (black), Human Resources Business Partner, I complained of race discrimination in connection with how I was being treated by Shanker-Passero. I stated the following: "Ms. Shanker-Passero has also made anti-black remarks and has sought to implement strategies and initiatives that would disproportionately exclude underrepresented groups from being able to access non-discriminatory SBA funded services provided by the Temple University Small Business Development Center. For example, during a meeting in my office, Ms. Shanker-Passero made racialize and stereotypical statements about North Philadelphia residents, et.all [sic]."

[19]       Following the above, in a meeting with Culbreath-Walton and Sandra Fochl (white), Temple University Equal Opportunity Compliance Office, we discussed Shanker-Passero's race discriminatory comments and conduct, the emotional impact it was having on me, and the impact it was having on how other employees viewed me. I stated that it seemed to me that Shanker-Passero's conduct was being supported by Hunter, which undermined me.

[20]       I received no conclusion to any investigation into my race discrimination complaints.

[21]       On February 23, 2024, without explanation. Respondent canceled my purchasing card.

[22]       On February 29, 2024, in a meeting James Rainey (black), Assistant Director of Employee Relations, and Laryn Jackson (black), Administrative Specialist Employee and Labor Relations, I complained of race discrimination in connection with Shanker-Passero and provided examples of the same. I stated that I had previously submitted a race

discrimination complaint in connection with Shanker-Passero but had not received any conclusion in response to my complaint.

[23]　　On March 11, 2024, in an email from Shanker-Passero, she stated that, per Human Resources, she and I were instructed not to meet one-on-one.

[24]　　On March 11 and 12, 2024, following the above, in emails to Culbreath-Walton, I complained of race discrimination in connection with how I was being treated and stated that, as a supervisor, it would have been beneficial for me to have been informed that that, per Human Resources, Shanker-Passero and I were not to meet one-on-one instead of being told the same by Shanker-Passero.

[25]　　I received no conclusion to any investigation into my race discrimination complaints.

[26]　　On March 19, 2024, in a meeting with Rainey and Jackson, I complained of race discrimination in connection with Shanker-Passero and provided examples of the same. I stated that I was concerned that Hunter was supportive of Shanker-Passero.

[27]　　On March 19, 2024, in an email from Shanker-Passero, she stated that she had been instructed by Human Resources to work remotely.

[28]　　On March 22, 2024, Shanker-Passero resigned from her employment with Respondent, effective March 29, 2024.

[29]　　On March 27, 2024, Shanker-Passero came into my office and screamed in my face the following: "My keys are on the table. I hate you and it has been absolutely sad what has happened to the center under you, and the whole fucking team feels that way."

[30]     On March 27, 2024, following the above, in an email to Debbie Campbell (white), Senior Vice Dean, copying Culbreath-Walton. Boyle, and Hunter. I described the above incident and comments by Shanker-Passero.

[31]     On March 28, 2024, in an email from Culbreath-Walton, she stated that she was in receipt of my above email and that they would "work with the Dean's office to review the situation."

[32]     On March 28, 2024, in an email to Boyle, I recommended that Respondent hold implicit and explicit bias training for my department, led by "a national expert on race relations," "to ensure that employees, including those in leadership positions are working in an anti-discriminatory environment."

[33]     On April 10, 2024, in an email to Sharon Boyle (white), Vice President, Human Resources, Culbreath-Walton, Rainey. and Harrison, I stated the following: "I expressed my keen interest in having the Pennsylvania Human Relations Commission provide workplace training, focusing on implicit and explicit bias, to enhance the cultural competency and inclusivity of our team. However, to my surprise, Dean Hunter expressed reservations and indicated that he did not believe such training would be prudent or impactful. He further emphasized his discomfort with bringing in an external agency for this purpose. I was taken aback by Dean Hunter's response as fostering a diverse and inclusive work environment is not only essential in fostering a positive workplace culture but also aligns with the values of our organization."

[34]     I received no response to my above email.

[35]     On April 15, 2024, in a meeting with Harrison. I complained of race discrimination and retaliation in connection with how I was being treated. I stated that I felt

targeted by Hunter based on my race discrimination complaints and that I was concerned that Hunter blamed me for Shanker-Passero's resignation.

[36]     I received no conclusion to any investigation into my race discrimination complaints.

[37]     On April 30, 2024, in a meeting with Hunter, we discussed open positions in the department and which current employees were qualified to fill the open positions. Regarding an open Senior Associate Director position, which had been held by Cherrill Wilson (black), Hunter commented: "it would be great for you to have a white person in that position." I made it clear that I objected to his race based comment.

[38]     On May 6, 2024, in a meeting with Hunter and Rainey, Respondent terminated my employment, effective immediately. I was not given any explanation for my termination.

[39]     I received no explanation, including the criteria, as to why I was terminated and nonblack and/or noncomplaining employees were retained.

[40]     Before I engaged in protected activity, I had no indication that my job was in jeopardy.

[41]     At the time of my termination, I was, to my knowledge, the only employee reporting to Hunter who engaged in protected activity.

[42]     I was the only employee who was terminated on May 6, 2024.

[43]     Respondent terminated my employment because of my race and/or my engaging in protected activity.

[44]     Respondent subjected me to a hostile work environment because of my race and/or my engaging in protected activity.

Page 09 of 11          2024-09-04 12 16.08 EDT          12199002000          From: Nancy Gisci

[45]   I had no opportunity to remain employed with Respondent.

[46]   I had no performance or disciplinary issues throughout my employment.

[47]   Respondent assigned my job duties and responsibilities to noncomplaining and/or nonblack employees. I was more qualified to perform my job duties and responsibilities than the noncomplaining and/or nonblack employees to whom my job duties and responsibilities were assigned.

[48]   Respondent failed to remedy or prevent the race discrimination and retaliation to which I was subjected.

[49]   Respondent failed to investigate my race discrimination complaints.

[50]   Respondent's race discriminatory and retaliatory conduct toward me has caused me emotional distress.

[51]   Respondent's comments and conduct evidence a bias against nonwhite and/or complaining employees.

**B.** Respondent has discriminated against me because of my race (black) and retaliated against me because of my engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended. 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended. 43 P.S. § 951, *et seq.* ("PHRA"), the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO"). and Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, *et seq.* ("1981").

3.   The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

___X___   **Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101,** *et seq.* **("PFPO"), Section __9-1103__ .**

4.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

   **X**       **This charge will be referred to the EEOC for the purpose of dual filing.**

5.    The Complainant seeks that Respondent be required to:

   (a) Make the Complainant whole.

   (b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

   (c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

   (d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

   (e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

9/3/2024
(Date Signed)

(Signature)    Howard Brown

Glenside, PA 19038

# EXHIBIT 2

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

**To:**  Howard Brown
▉▉▉▉▉▉▉▉▉▉
Glenside, PA 19038

**Re:**  Howard Brown v. TEMPLE UNIVERSITY
EEOC Charge Number:  17G-2024-00074

EEOC Representative and email:    State Local and Tribal Program Manager
PHLSTATEANDLOCAL@EEOC.GOV

### DETERMINATION OF CHARGE

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge. The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue.  If you choose to file a lawsuit against the respondent(s) on this charge under federal law, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.**  Receipt generally occurs on the date that you (or your representative) received this document.  You should keep a record of the date you received this notice.  Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days.  (The time limit for filing a lawsuit based on a claim under state law may be different.)

Please retain this notice for your records.

On Behalf of the Commission:

Digitally Signed By:  Karen McDonough  12/4/2025
Karen McDonough
Deputy District Director

cc:    For Respondent
Anna  Oppenheim
Associate University Counsel
Temple University Office of University Counsel
300 Sullivan Hall 1330
West Polett Walk
Philadelphia, PA 19122

For Charging Party
Emily R Derstine Friesen Esq.
Console Mattiacci Law
1525 Locust Street, 9th Floor
Philadelphia, PA 19102